# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

LARRY GWIN,                              )
SAMMY HUTTON,                            )
THOMAS MASON,                            )
CHARLES MARSHALL,                        )
TONY REAMES,                             )
GERALD INGRAM,                           )     Cause No. 03-862 MJR
                                         )
Plaintiffs,                              )
                                         )
v.                                       )
                                         )
AMERICAN RIVER                           )
TRANSPORTATION COMPANY,                  )
                                         )
Serve: CT Corporation System            )
       208 So. Lasalle St., Suite 814    )
       Chicago, Illinois 60604-1101      )
                                         )
Defendant.                               )

## COMPLAINT

COME NOW Plaintiffs, Larry Gwin, Sammy Hutton, Thomas Mason, Charles Marshall, Tony Reames, and Gerald Ingram (hereinafter "Plaintiffs") and for their Complaint against Defendant, American River Transportation Company, (hereinafter ARTCO), state as follows:

1.      Plaintiff, Larry Gwin, is now and was at all times mentioned a citizen and resident of the State of Illinois.

2.      Plaintiff, Sammy Hutton, is and was at all times mentioned a citizen and resident of the State of Tennessee.

3.      Plaintiff, Thomas Mason, is and was at all times mentioned a citizen and resident of the State of Louisiana.



4.     Plaintiff, Charles Marshall,  is and was at all times mentioned a citizen and resident of the State of Louisiana.

5.     Plaintiff, Tony Reames, is and was at all times mentioned a citizen and resident of the State of Mississippi.

6.     Plaintiff, Gerald Ingram, is and was at all times mentioned a citizen and resident of the State of Mississippi.

7.     Defendant, ARTCO, is now and was at all times mentioned a duly organized and existing Delaware corporation, with its principal place of business in the State of Illinois. Defendant, ARTCO, owns, operates, and maintains a location in the Southern District of Illinois for the transaction of its usual and customary business.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction as this action arises under 28 U.S.C. § 1331 and 46 U.S.C. 2114 as hereinafter more fully appears.

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 in that Defendant, ARTCO, transacts business within the Southern District of Illinois and the State of Illinois, pursuant to 735 ILCS 5/2-209, Illinois's Long-Arm Statute.

10.     Further, the exercise of personal jurisdiction over Defendant, ARTCO, by this Court comports with the requirements of the due process clause of the Fourteenth Amendment in that Defendant, ARTCO, has sufficient minimum contacts with the State of Illinois and with this District.

## GENERAL ALLEGATIONS

11.     Plaintiff, Larry Gwin, is now and was at all times mentioned a citizen and resident of the State of Illinois, and was employed as a towboat Pilot and Captain and Master for Defendant, ARTCO, from September 3, 1997, until his termination on or about May 10, 2003. Plaintiff needed to work and enjoyed his work as a Pilot and Captain until the beginning of the events alleged herein.  During his years of employment, plaintiff rendered satisfactory services for Defendant, ARTCO.  Plaintiff's duties and responsibilities included the piloting of a towboat which transported barges upon the inland waterways of the United States including the Mississippi River.

12.     Plaintiff, Sammy Hutton, is and was at all times mentioned a citizen and resident of the State of Tennessee, and was employed as a towboat Mate, Steersman, and Pilot for Defendant, ARTCO, from 1992 until his termination on or about April 19, 2003.  Plaintiff needed to work and enjoyed his work as a Mate, Steersman, and Pilot until the beginning of the events alleged herein.  During his years of employment, plaintiff rendered satisfactory services for Defendant, ARTCO.  Plaintiff's duties and responsibilities included the piloting of a towboat which transported barges upon the inland waterways of the United States including the Mississippi River.

13.     Plaintiff, Thomas Mason, is and was at all times mentioned a citizen and resident of the State of Louisiana, and was employed as a towboat Pilot and Captain and Master for Defendant, ARTCO, from August 7, 1998 until his termination on or about April 11, 2003. Plaintiff needed to work and enjoyed his work as a Pilot and Captain until the beginning of the events alleged herein.  During his years of employment, plaintiff rendered satisfactory services

-3-

for Defendant, ARTCO.  Plaintiff's duties and responsibilities included the piloting of a towboat which transported barges upon the inland waterways of the United States including the Mississippi River.

14.     Plaintiff, Charles Marshall, is and was at all times mentioned a citizen and resident of the State of Louisiana, and was employed as a towboat Pilot and Captain and Master for Defendant, ARTCO, from June 1995 until his termination on or about June 2003.  Plaintiff needed to work and enjoyed his work as a Pilot and Captain until the beginnings of the events alleged herein. During his years of employment, plaintiff rendered satisfactory services for Defendant, ARTCO.  Plaintiff's duties and responsibilities included the piloting of a towboat which transported barges upon the inland waterways of the United States including the Mississippi River.

15.     Plaintiff, Tony Reames, is and was at all times mentioned a citizen and resident of the State of Mississippi, and was employed as a towboat Pilot for Defendant, ARTCO, from May 1998 until his termination on or about March 28, 2003.  Plaintiff needed to work and enjoyed his work as a Pilot until the beginnings of the events alleged herein. During his years of employment, plaintiff rendered satisfactory services for Defendant, ARTCO.  Plaintiff's duties and responsibilities included the piloting of a towboat which transported barges upon the inland waterways of the United States including the Mississippi River.

16.     Plaintiff, Gerald Ingram, is and was at all times mentioned a citizen and resident of the State of Mississippi, and was employed as a towboat Pilot for Defendant, ARTCO, from July 4, 1998 until his termination on or about April 11, 2003.  Plaintiff needed to work and enjoyed his work as a Pilot until the beginnings of the events alleged herein.  During his years of

employment, plaintiff rendered satisfactory services for Defendant, ARTCO.  Plaintiff's duties and responsibilities included the piloting of a towboat which transported barges upon the inland waterways of the United States including the Mississippi River.

17.     That beginning on or about January 1, 2002, defendant, ARTCO, began pressuring plaintiffs, Larry Gwin, Sammy Hutton, Thomas Mason, Charles Marshall, Tony Reames, Gerald Ingram and other ARTCO Pilots, Captains and Master to push bigger loads, or "oversized" loads, for example, loads in excess of 35 barges, in their positions as a Pilot, Captain or Master, on the inland waterways of the United States, including the Mississippi River.

18.     That plaintiffs, Larry Gwin, Sammy Hutton, Thomas Mason, Charles Marshall, Tony Reames and Gerald Ingram refused to push bigger loads, or "oversized" loads, for example in excess of 35 barges, in their positions as Pilots, Captains and Masters for defendant, ARTCO, because they had a reasonable apprehension or expectation that performing such duties would result in serious injury to plaintiffs, other seamen, or the public.

19.     That the circumstances causing plaintiffs', Larry Gwin, Sammy Hutton, Thomas Mason, Charles Marshall, Tony Reames and Gerald Ingram, apprehension of serious injury was such that a reasonable person, under similar circumstances, would conclude that there is a real danger of an injury or serious impairment of health resulting from the performance of the duties as required by plaintiffs' employer. The circumstances giving rise to the reasonable apprehension of serious injury to plaintiffs, other seaman, or the public, include, but are not limited to the following:

    A)    The length and width of large tows (specifically over 35 barges) is too much for the existing bridges on the inland waterways of the United States to handle safely and the margin of error for the pilot is too small. These tows

literally fill many of the bridges.  As an example, a 48-barge tow in an eight-wide by six-long configuration is approximately 280 feet in width and 1,200 feet in length.

B)      The prospect of bridge collisions from oversize or overloaded tows is substantial; A 70,000-ton downbound tow moving at 8-10 mph or even at a lesser speed can do untold damage to bridge piers and supports and result in serious injury and loss of life.

C)      Steering and handling of oversized tows are greatly diminished.  For example, when a 200' x 55', 10,500 horse power towboat faces up to 48 barges, it becomes a matter of the cart dragging the horse.  This is especially true when the draft of the barges exceeds the draft of the tugboat, the tugboat does not have the ability to "get under" the barge it is pushing, greatly diminishing steering and handling.

D)      Oversize tows, as a result of their size, are extremely sluggish in their ability to maneuver.  Precision steering is not possible.  An example is the need for an oversize tow to flank a bend where a standard 35-barge tow would have no trouble steering the same bend.

E)      On a planned voyage of more than a few hours duration, the weather and river stage cannot be predicted and adverse towing condition must always be anticipated.

F)      Fatigue is a critical factor on oversized and overloaded tows operating on a 24 hour schedule.  Attempting to navigate an oversized tow through a narrow bridge span requires focused and consistent concentration to carry out the maneuver.

G)      There have been numerous collisions between barges and bridges causing serious injuries, deaths, property damage and the release of hazardous chemicals.  For example, on May 26, 2002, in Webber Falls, Oklahoma, a towboat pushing only two barges collided with the bridge support for Interstate 40 as it crosses the Arkansas River.  The collision caused 10 vehicles to fall into the river, and 14 people to lose their lives.  The towboat Robert Y. Love was pushing two empty asphalt barges at about 5 mph when the collision occurred, causing a 500 foot section, nearly one-third of the 1,988 foot bridge, to collapse and fall into the water.

H)      On September 15, 2001, a group of only four barges slammed into the Queen Isabella Causeway in South Padre Island, Texas; Port Isabel, Texas. Thirteen people were rescued, but eight others were killed after portions of the 2.37 mile-long Queen Isabella Causeway collapsed.  A tow pushing only four barges smashed into a pillar of the only bridge leading to South Padre Island

-6-

toppling three 80-foot sections of the bridge, and killing at least eight people whose vehicles plunged into the water 85 feet below. Victims were retrieved from the Laguna Madre, part of the Gulf Intra coastal Waterway.

I)   On July 19, 2001, a pressure barge being pushed westbound by the M/V MR. BARRY, rammed the span of the Louisa Bridge in South Central Louisiana. Vent stacks were sheared from two of three tanks aboard the 380 by 53-foot Kirby 31801, releasing a plume of the barge's explosive propane-propylene mix cargo into the atmosphere. An estimated 500 residents and workers were evacuated from an area within a five-mile radius of the accident site and a 10-mile section of the Gulf Intercostal Water Way was closed.

J)   On April 4, 1998, a tow of the M/V ANNE HOLLY, which was traveling northbound on the Mississippi River through the St. Louis Harbor, struck the Missouri-side pier of the center span of the Eads Bridge. Eight barges broke away and drifted back through the Missouri span. Three of these barges drifted toward the PRESIDENT CASINO on the ADMIRAL, a permanently moored gambling vessel below the bridge on the Missouri side of the river. The drifting barges struck the moored ADMIRAL, causing most of its mooring lines to break. The ADMIRAL then rotated away from the Missouri riverbank. The captain of the ANNE HOLLY disengaged his vessel from the remaining barges in the tow and placed the ANNE HOLLY's bow against the ADMIRAL's bow to hold it against the bank. No deaths resulted from the accident, 50 people were examined for minor injuries. Of those examined, 16 were sent to local hospitals for further treatment. Among the safety issues discussed by the National Transportation Safety Board report of the incident are: the advisability of the ANNE HOLLY captain's decision to make the upriver transit because it was underpowered; the effectiveness of safety measures provided for the permanently moored vessel PRESIDENT CASINO ON THE ADMIRAL; and the adequacy of public safety for permanently moored vessels generally.

K)   On September 22, 1993, about 0245, only six barges that were being pushed at only clutch speed by the towboat NAUVILLA in dense fog struck and displaced the Big Bayou Canot railroad bridge near Mobile, Alabama. About 0253, National Railroad Passenger Corporation (Amtrak) train 2, the Sunset Limited, en route from Los Angeles, California, to Miami, Florida, with 220 persons on board, struck the displaced bridge and derailed. The three locomotive units, the baggage and dormitory cars, and two of the six passenger cars fell into the water. The fuel tanks on the locomotive units ruptured, and the locomotive units and the baggage and dormitory cars caught fire. Forty-two passengers and 5 crew members were killed; 103 passengers were injured. The National Transportation and Safety Board determined that contributing to the accident was the lack of a national risk assessment program to determine bridge vulnerability to marine vessel collision.

L)   On May 28, 1993, the towboat CHRIS, moving at only clutch speed pushing only one empty hopper barge DM 3021, collided with a support pier of the eastern span of the Judge William Seeber Bridge in New Orleans, Louisiana. The bridge, known locally as the Claiborned Avenue bridge, carries Highway 39 over the New Orleans Inner Harbor Navigation Canal, known locally as the Industrial Canal. The impact severed the fame of the bridge designed to support vertical loads causing two approach spans (about 145 feet of bridge deck) and the two-column support frame to collapse onto the barge and into the shallow waters of the canal. Two automobiles carrying three people fell with the four-lane bridge deck, resulting in one death to a pregnant woman and serious injuries to the other two people. As a result of the accident, the canal was closed to navigation traffic for 2 days and the bridge was closed to vehicle traffic for 2 months.

M)   On December 18, 1989, the tow of the M/V MATTHEW REED, the tank barge HOLLYWOOD CHEM 181, collided with the East Park Avenue drawbridge in Houma, Louisiana. As a result of the collision, the gauge flange on the #1 port tank of the HOLLYWOOD CHEM 181 was damaged and a portion of the barge's cargo, propylene, was released into the atmosphere. The East Park Avenue draw tender was treated for inhalation of propylene. Residents in the immediate vicinity were evacuated at the direction of the Terrebonne Parish Civil Defense.

N)   On April 2, 1983, a tow consisting of four single-hull tank barges in tandem laden with crude oil, being pushed by the towboat CITY OF GREENVILLE, collided with one of the piers of the Poplar Street Bridge, which crosses the Mississippi River between St. Louis, Missouri, and East St. Louis, Illinois. The tow was proceeding down river during high water conditions, en route from Wood River, Illinois, to Memphis, Tennessee. At least one of the two middle barges in the tow was ruptured by the impact of the collision. Crude oil was released and ignited almost immediately. One barge remained connected to the towboat, but the other three barges broke loose and floated down river. One barge sank about one mile from the bridge, while a second barge collided with barges moored at the Monsanto Chemical Company barge loading facility, and the other barge collided with a Pillsbury Company grain barge loading terminal. The Monsanto and Pillsbury facilities, both located on the Illinois side of the river, sustained sever damage. The burning oil ignited several fires along about 2 miles of waterfront on the Illinois side of the river and polluted approximately 10 miles of the river. There were no deaths, and only one person, who was working on barges at the Monsanto facility, received minor injuries as a result of this accident. The damage to the barge loading facilities, the damage to grain barges and their cargoes, the damage and loss of cargo sustained by the tow of the CITY OF GREENVILLE, and the cost of oil cleanup operations were estimated to be about $9,000,000.

O)      On September 21, 1972, the small tug CAROLYN and its tow, the barge WEEKS
no. 254, struck a trestle on the western side of the Chesapeake Bay Bridge and
Tunnel (CBBT).  After the initial impact, the tug and barge drifted south and
struck the CBBT in various locations.  The CAROLYN then passed under the
bridge and her towing hawser parted. Thereupon, the CAROLYN drifted south
and grounded on Chesapeake Beach. The Chesapeake Bay Bridge and Tunnel is
the principal highway traffic artery joining the Delmarva Peninsula to tidewater
Virginia in the Norfolk area.  During a fourteen day period following this accident
U.S. Highway 13 remained closed.  A twenty-mile, twenty-minute trip across
Chesapeake Bay became a 400-mile detour.  The economic loss to the area in
1972 was conservatively estimated as $3,397,000.

## COUNT I
## WRONGFUL DISCRIMINATION IN VIOLATION OF 46 U.S.C. § 2114

20.     Plaintiff, Larry Gwin, realleges the allegations set forth above in paragraphs 1-19

and the same are made a part hereof and are incorporated by reference herein.

21.     Defendant, ARTCO, wrongfully discharged and discriminated against plaintiff,

Larry Gwin, for refusing to push bigger loads, or "oversized" loads, for example in excess of

thirty-five (35) barges, when plaintiff had a reasonable apprehension or expectation that

performing such duties would result in serious injury to plaintiff, other seamen, or the public.

22.     A reasonable person, under similar circumstances, would conclude that there is a

real danger of injury or serious impairment of health from the performance of the duties required

by defendant, ARTCO, described herein.

23.     Defendant terminated plaintiff, Larry Gwin, as a result of his refusal to push

bigger loads, or "oversized" loads, for example in excess of thirty-five (35) barges, in his

position as a Pilot, Captain and Master for defendant, ARTCO.

24.     That the aforesaid termination is a violation of the purposes and provisions of 46

U.S.C. § 2114.

25.     That Defendant, at all times, has acted willfully and maliciously with respect to its treatment of plaintiff, Larry Gwin.

26.     That as a result of the foregoing treatment by defendant, plaintiff, Larry Gwin, was caused to suffer substantial mental pain and anguish as well as loss of income, benefits and loss of earning capacity.

27.     WHEREFORE, plaintiff, Larry Gwin, prays for judgment against defendant, American River Transportation Company, for compensatory damages in a fair and reasonable amount and for punitive damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and for his costs, attorneys fees and PREJUDGEMENT INTEREST from the date of his termination and for such other relief as the Court deems necessary and proper.

## COUNT II
## WRONGFUL TERMINATION UNDER FEDERAL MARITIME COMMON LAW

28.     Plaintiff, Larry Gwin, realleges the allegations set forth in paragraphs 1-19 and the same are made a part hereof and are incorporated by reference herein.

29.     Defendant, ARTCO's, conduct in terminating Plaintiff for his refusal to perform unsafe practices that he reasonably believed would endanger his safety, the safety of his crew, other seaman and the public is contrary to the law and the public policy embodied in the federal Maritime law, federal statutes and the purposes and provisions of 46 U.S.C. § 2114 and 46 U.S.C. § 2302.

30.     Defendant, ARTCO, at all times, has acted willfully and maliciously with respect to its treatment of Plaintiff.

31.     As a result of the foregoing treatment by Defendant, ARTCO, Plaintiff was caused to suffer substantial mental pain and anguish as well as loss of income, benefits and loss of earning capacity.

32.     Wherefore, Plaintiff, Larry Gwin, prays for judgment against Defendant, American River Transportation Company, for compensatory damages in a fair and reasonable amount and for punitive damages in the amount of TEN MILLION DOLLARS ($10,000,000.00),  for his costs, attorney fees and PREJUDGMENT INTEREST from the date of his termination and for such other relief as the Court deems necessary and proper.

## COUNT III
## WRONGFUL TERMINATION- STATE LAW

33.     Plaintiff, Larry Gwin, realleges the allegations set forth above in paragraphs 1-19 and the same are made a part hereof and are incorporated herein.

34.     Defendant, ARTCO's, conduct in terminating Plaintiff for his refusal to perform unsafe practices that he reasonably believed would endanger his safety, the safety of his crew, other seaman and the public is contrary to the law and the public policy of the State of Illinois, federal Maritime law, federal statutes and the purposes and provisions of 46 U.S.C. § 2114 and 46 U.S.C. § 2302.

35.     Defendant ARTCO, at all times, has acted willfully and maliciously with respect to its treatment of Plaintiff.

36.     As a result of the foregoing treatment by Defendant, ARTCO, Plaintiff was caused to suffer substantial mental pain and anguish as well as loss of income, benefits and loss of earning capacity.

37.    Wherefore, Plaintiff, Larry Gwin, prays for judgment against Defendant,

American River Transportation Company, for compensatory damages in a fair and reasonable

amount, and for punitive damages in the amount of TEN MILLION DOLLARS ($10,000,000.00),

for his costs, attorney fees and PREJUDGMENT INTEREST from the date of his termination

and for such other relief as the Court Deems necessary and proper.

**COUNT IV**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

38.    Plaintiff, Larry Gwin, realleges the allegations set forth above in paragraphs 1-19

and the same are made a part hereof and are incorporated by reference herein.

39.    Defendant, ARTCO, intentionally inflicted mental and emotional distress upon

Plaintiff through intimidations, and threats, unethical, illegal and immoral work conditions, and

created a threatening work environment from the time defendant, ARTCO, tried to get plaintiff,

Larry Gwin to push bigger loads, or "oversized" loads, until the time of his termination.

40.    Defendant, ARTCO, at all times, has acted willfully and maliciously with respect to

its treatment of Plaintiff.

41.    As a result of the foregoing treatment by Defendant, ARTCO, Plaintiff was caused to

suffer mental pain and anguish as well as loss of income, benefits and loss of earning capacity.

42.    WHEREFORE, Plaintiff, Larry Gwin, prays for judgment against Defendant,

American River Transportation Company, for compensatory damages in reasonable amounts and

for punitive damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and for his

costs, attorneys fees and PREJUDGMENT INTEREST from the date of his termination, and for

such other relief as the Court deems necessary and proper.

## COUNT V
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

43.     Plaintiff, Larry Gwin, realleges the allegations set forth above in paragraphs 1-19 and the same are made a part hereof and are incorporated by reference herein.

44.     Defendant, ARTCO, at all times, has acted wantonly and negligently in the above described treatment of Plaintiff.

45.     Defendant, ARTCO, negligently and wantonly inflicted mental and emotional distress upon plaintiff through intimidation and threats, unethical, illegal and immoral work conditions, and created a threatening and hostile work environment from the time defendant, ARTCO, tried to get plaintiff, Larry Gwin, to push bigger or "oversized" loads,  until the time of his termination.  Defendant, ARTCO, knew or should have known that its conduct would injure Plaintiff mentally.

46.     As a result of the foregoing treatment by Defendant, ARTCO, Plaintiff was caused to suffer mental pain and anguish as well as loss of income, benefits and loss of earning capacity.

47.     WHEREFORE, Plaintiff, Larry Gwin, prays for judgment against Defendant, American River Transportation Company, for compensatory damages in reasonable amounts, and for punitive damages in the amount of TEN MILLION DOLLARS ($10,000,000.00), and for his costs, attorneys fees and PREJUDGMENT INTEREST from the date of his termination, and for such other relief as the Court deems necessary and proper.

## COUNT VI
## WRONGFUL DISCRIMINATION IN VIOLATION OF 46 U.S.C. § 2114

48.     Plaintiff, Sammy Hutton, realleges the allegations set forth above in paragraphs 1-19 and the same are made a part hereof and are incorporated by reference herein.

-13-

49.     Defendant, ARTCO, wrongfully discharged and discriminated against plaintiff, Sammy Hutton, for refusing to push bigger loads, or "oversized" loads, for example in excess of thirty-five (35) barges, when plaintiff had a reasonable apprehension or expectation that performing such duties would result in serious injury to plaintiff, other seamen, or the public.

50.     A reasonable person, under similar circumstances, would conclude that there is a real danger of injury or serious impairment of health from the performance of the duties required by defendant, ARTCO, described herein.

51.     Defendant terminated plaintiff, Sammy Hutton, as a result of his refusal to push bigger loads, or "oversized" loads, in his position as a Master, Steersman and Pilot for defendant, ARTCO.

52.     That the aforesaid termination is a violation of the purposes and provisions of 46 U.S.C. § 2114.

53.     That Defendant, at all times, has acted willfully and maliciously with respect to its treatment of plaintiff, Sammy Hutton.

54.     That as a result of the foregoing treatment by defendant, plaintiff, Sammy Hutton, was caused to suffer substantial mental pain and anguish as well as loss of income, benefits and loss of earning capacity.

55.     WHEREFORE, plaintiff, Sammy Hutton, prays for judgment against defendant, American River Transportation Company, for compensatory damages in a fair and reasonable amount and for punitive damages in the amount of TEN MILLION DOLLARS ($10,000,000.00), and for his costs, attorneys fees and PREJUDGEMENT INTEREST from the date of his termination and for such other relief as the Court deems necessary and proper.

-14-

### COUNT VII
### WRONGFUL TERMINATION UNDER FEDERAL MARITIME COMMON LAW

56.     Plaintiff, Sammy Hutton, realleges the allegations set forth in paragraphs 1-19 and the same are made a part hereof and are incorporated by reference herein.

57.     Defendant, ARTCO's, conduct in terminating Plaintiff for his refusal to perform unsafe practices that he reasonably believed would endanger his safety, the safety of his crew, other seaman and the public is contrary to the law and the public policy embodied in the federal Maritime law, federal statutes and the purposes and provisions of 46 U.S.C. § 2114 and 46 U.S.C. § 2302.

58.     Defendant, ARTCO, at all times, has acted willfully and maliciously with respect to its treatment of Plaintiff.

59.     As a result of the foregoing treatment by Defendant, ARTCO, Plaintiff was caused to suffer substantial mental pain and anguish as well as loss of income, benefits and loss of earning capacity.

60.     Wherefore, Plaintiff, Sammy Hutton, prays for judgment against Defendant, American River Transportation Company, for compensatory damages in a fair and reasonable amount and for punitive damages in the amount of TEN MILLION DOLLARS ($10,000,000.00), and for his costs, attorneys fees, and PREJUDGMENT INTEREST from the date of his termination and for such other relief as the Court Deems necessary and proper.

### COUNT VIII
### WRONGFUL TERMINATION- STATE LAW

61.     Plaintiff, Sammy Hutton, realleges the allegations set forth above in paragraphs 1-19 and the same are made a part hereof and are incorporated herein.

62.     Defendant, ARTCO's, conduct in terminating Plaintiff for his refusal to perform unsafe practices that he reasonably believed would endanger his safety, the safety of his crew, other seaman and the public is contrary to the law and the public policy of the State of Illinois, federal Maritime law, federal statutes and the purposes and provisions of 46 U.S.C. § 2114 and 46 U.S.C. § 2302.

63.     Defendant, ARTCO, at all times, has acted willfully and maliciously with respect to its treatment of Plaintiff.

64.     As a result of the foregoing treatment by Defendant, ARTCO, Plaintiff was caused to suffer substantial mental pain and anguish as well as loss of income, benefits and loss of earning capacity.

65.     Wherefore, Plaintiff, Sammy Hutton, prays for judgment against Defendant, American River Transportation Company, for compensatory damages in a fair and reasonable amount and for punitive damages in the amount of TEN MILLION DOLLARS ($10,000,000.00), and for his costs, attorneys fees,  and PREJUDGMENT INTEREST from the date of his termination and for such other relief as the Court Deems necessary and proper.

## COUNT IX
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

66.     Plaintiff, Sammy Hutton, realleges the allegations set forth above in paragraphs 1-19 and the same are made a part hereof and are incorporated by reference herein.

67.     Defendant, ARTCO, intentionally inflicted mental and emotional distress upon Plaintiff through intimidations and threats, unethical, illegal and immoral work conditions, and created a threatening work environment from the time defendant, ARTCO, tried to get plaintiff, Sammy Hutton, to push bigger loads, or "oversized" loads, until the time of his termination.

-16-

68.     Defendant, ARTCO, at all times, has acted willfully and maliciously with respect to its treatment of Plaintiff.

69.     As a result of the foregoing treatment by Defendant, ARTCO, Plaintiff was caused to suffer mental pain and anguish, pain and suffering as well as loss of income, benefits and loss of earning capacity.

70.     WHEREFORE, Plaintiff, Sammy Hutton, prays for judgment against Defendant, American River Transportation Company, for compensatory damages in reasonable amounts and for punitive damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and for his costs, attorneys fees and PREJUDGMENT INTEREST from the date of his termination and such other relief as the Court deems necessary and proper.

## COUNT X
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

71.     Plaintiff, Sammy Hutton, realleges the allegations set forth above in paragraphs 1-19 and the same are made a part hereof and are incorporated by reference herein.

72.     Defendant, ARTCO, at all times, has acted wantonly and negligently in the above described treatment of Plaintiff.

73.     Defendant, ARTCO, negligently and wantonly inflicted mental and emotional distress upon plaintiff through intimidation and threats, unethical, illegal and immoral work conditions, and created a threatening and hostile work environment from the time defendant, ARTCO, tried to get plaintiff, Sammy Hutton, to push bigger or "oversized" loads, until the time of his termination.  Defendant, ARTCO, knew or should have known that its conduct would injure Plaintiff mentally.

-17-

74.     As a result of the foregoing treatment by Defendant, ARTCO, Plaintiff was caused to suffer mental pain and anguish and endured pain and suffering as well as loss of income, benefits and loss of earning capacity.

75.     WHEREFORE, Plaintiff, Sammy Hutton, prays for judgment against Defendant, American River Transportation Company, for compensatory damages in reasonable amounts, for punitive damages in the amount of TEN MILLION DOLLARS ($10,000,000.00), and for his costs, attorneys fees and PREJUDGMENT INTEREST from the date of his termination and such other relief as the Court deems necessary and proper.

## COUNT XI
## WRONGFUL DISCRIMINATION IN VIOLATION OF 46 U.S.C. § 2114

76.     Plaintiff, Thomas Mason, realleges the allegations set forth above in paragraphs 1-19 and the same are made a part hereof and are incorporated by reference herein.

77.     Defendant, ARTCO, wrongfully discharged and discriminated against plaintiff, Thomas Mason, for refusing to push bigger loads, or "oversized" loads, for example in excess of thirty-five (35) barges, when plaintiff had a reasonable apprehension or expectation that performing such duties would result in serious injury to plaintiff, other seamen, or the public.

78.     A reasonable person, under similar circumstances, would conclude that there is a real danger of injury or serious impairment of health from the performance of the duties required by defendant, ARTCO, described herein.

79.     Defendant terminated plaintiff, Thomas Mason, as a result of his refusal to push bigger loads, or "oversized" loads, in his position as a Pilot, Captain and Master for defendant, ARTCO.

-18-

80.     That the aforesaid termination is a violation of the purposes and provisions of 46

U.S.C. § 2114.

81.     That Defendant, at all times, has acted willfully and maliciously with respect to its

treatment of plaintiff, Thomas Mason.

82.     That as a result of the foregoing treatment by defendant, plaintiff, Thomas Mason,

was caused to suffer mental pain and anguish as well as loss of income, benefits and loss of earning

capacity.

83.     WHEREFORE, plaintiff, Thomas Mason, prays for judgment against defendant,

American River Transportation Company, for compensatory damages in a fair and reasonable

amount, and for punitive damages in the amount of TEN MILLION DOLLARS ($10,000,000.00),

and for his costs, attorneys fees and PREJUDGMENT INTEREST from the date of his termination

and for such other relief as the Court deems necessary and proper.

**COUNT XII**
**WRONGFUL TERMINATION UNDER FEDERAL MARITIME COMMON LAW**

84. Plaintiff, Thomas Mason, realleges the allegations set forth in paragraphs 1-19 and

the same are made a  part hereof and are incorporated by reference herein.

85.     Defendant, ARTCO's, conduct in terminating Plaintiff for his refusal to perform

unsafe practices that he reasonably believed would endanger his safety, the safety of his crew, other

seaman and the public is contrary to the law and the public policy embodied in the federal Maritime

law, federal statutes and the purposes and provisions of 46 U.S.C. § 2114 and 46 U.S.C. § 2302.

86.     Defendant, ARTCO, at all times, has acted willfully and maliciously with respect to

its treatment of Plaintiff.

87.    As a result of the foregoing treatment by Defendant, ARTCO, Plaintiff was caused to suffer mental pain and anguish as well as loss of income, benefits and loss of earning capacity.

88.    Wherefore, Plaintiff, Thomas Mason, prays for judgment against Defendant, American River Transportation Company, for compensatory damages in a fair and reasonable amount, and for punitive damages in the amount of TEN MILLION DOLLARS ($10,000,000.00), and for his costs, attorneys fees and PREJUDGMENT INTEREST from the date of his termination and for such other relief as the Court Deems necessary and proper.

## COUNT XIII
## WRONGFUL TERMINATION- STATE LAW

89.    Plaintiff, Thomas Mason,  realleges the allegations set forth above in paragraphs 1-19  and the same are made a part hereof and are incorporated herein.

90.    Defendant, ARTCO's, conduct in terminating Plaintiff for his refusal to perform unsafe practices that he reasonably believed would endanger his safety, the safety of his crew, other seaman and the public is contrary to the law and the public policy of the State of Illinois, federal Maritime law, federal statutes and the purposes and provisions of 46 U.S.C. § 2114 and 46 U.S.C. § 2302.

91.    Defendant, ARTCO, at all times, has acted willfully and maliciously with respect to its treatment of Plaintiff.

92.    As a result of the foregoing treatment by Defendant, ARTCO, Plaintiff was caused to suffer mental pain and anguish as well as loss of income, benefits and loss of earning capacity.

93.    Wherefore, Plaintiff, Thomas Mason, prays for judgment against Defendant, American River Transportation Company, for compensatory damages in a fair and reasonable

amount, and for punitive damages in the amount of TEN MILLION DOLLARS ($10,000,000.00), and for his costs, attorneys fees and PREJUDGMENT INTEREST from the date of his termination and for such other relief as the Court Deems necessary and proper.

**COUNT XIV**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

94.     Plaintiff, Thomas Mason, realleges the allegations set forth above in paragraphs 1-19 and the same are made a part hereof and are incorporated by reference herein.

95.     Defendant, ARTCO, intentionally inflicted mental and emotional distress upon Plaintiff through intimidations and threats, unethical, illegal and immoral work conditions, and created a threatening work environment from the time defendant, ARTCO, tried to get plaintiff, Thomas Mason to push bigger loads, or "oversized" loads, until the time of his termination.

96.     Defendant, ARTCO, at all times, has acted willfully and maliciously with respect to its treatment of Plaintiff.

97.     As a result of the foregoing treatment by Defendant, ARTCO, Plaintiff was caused to suffer mental pain and anguish, as well as loss of income, benefits and loss of earning capacity.

98.     WHEREFORE, Plaintiff, Thomas Mason, prays for judgment against Defendant, American River Transportation Company, for compensatory damages in reasonable amounts and for punitive damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and for his costs, attorneys fees and PREJUDGMENT INTEREST from the date of his termination and such other relief as the Court deems necessary and proper.

## COUNT XV
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

99.     Plaintiff, Thomas Mason, realleges the allegations set forth above in paragraphs 1-19 and the same are made a part hereof and are incorporated by reference herein.

100.    Defendant, ARTCO, at all times, has acted wantonly and negligently in the above described treatment of Plaintiff.

101.    Defendant, ARTCO, negligently and wantonly inflicted mental and emotional distress upon plaintiff through intimidation and threats, unethical, illegal and immoral work conditions, and created a threatening and hostile work environment from the time defendant, ARTCO, tried to get plaintiff, Thomas Mason, to push bigger or "oversized" loads, for example loads in excess of 35 barges,  until the time of his termination.  Defendant, ARTCO, knew or should have known that its conduct would injure Plaintiff mentally.

102.    As a result of the foregoing treatment by Defendant, ARTCO, Plaintiff was caused to suffer mental pain and anguish and endured pain and suffering as well as loss of income, benefits and loss of earning capacity.

103.    WHEREFORE, Plaintiff, Thomas Mason, prays for judgment against Defendant, American River Transportation Company, for compensatory damages in reasonable amounts, and for punitive damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and for his costs, attorneys fees and PREJUDGMENT INTEREST from the date of his termination and for such other relief as the Court deems necessary and proper.

## COUNT XVI
## WRONGFUL DISCRIMINATION IN VIOLATION OF 46 U.S.C. § 2114

104.    Plaintiff, Charles Marshall, realleges the allegations set forth above in paragraphs 1-19 and the same are made a part hereof and are incorporated by reference herein.

105.    Defendant, ARTCO, wrongfully discharged and discriminated against plaintiff, Charles Marshall, for refusing to push bigger loads, or "oversized" loads, for example in excess of thirty-five (35) barges, when plaintiff had a reasonable apprehension or expectation that performing such duties would result in serious injury to plaintiff, other seamen, or the public.

106.    A reasonable person, under similar circumstances, would conclude that there is a real danger of injury or serious impairment of health from the performance of the duties required by defendant, ARTCO, described herein.

107.    Defendant terminated plaintiff, Charles Marshall, as a result of his refusal to push bigger loads, or "oversized" loads, in his position as a Pilot, Captain and Master for defendant, ARTCO.

108.    That the aforesaid termination is a violation of the purposes and provisions of 46 U.S.C. § 2114.

109.    That Defendant, at all times, has acted willfully and maliciously with respect to its treatment of plaintiff, Charles Marshall.

110.    That as a result of the foregoing treatment by defendant, plaintiff, Charles Marshall, was caused to suffer mental pain and anguish as well as loss of income, benefits and loss of earning capacity.

111.    WHEREFORE, plaintiff, Charles Marshall, prays for judgment against defendant, American River Transportation Company, for compensatory damages in a fair and reasonable amount, and for punitive damages in the amount of TEN MILLION DOLLARS ($10,000,000.00), and for his costs, attorneys fees and PREJUDGMENT INTEREST from the date of his termination and for such other relief as the Court deems necessary and proper.

## COUNT XVII
## WRONGFUL TERMINATION UNDER FEDERAL MARITIME COMMON LAW

112.    Plaintiff, Charles Marshall, realleges the allegations set forth in paragraphs 1-19 and the same are made a part hereof and are incorporated by reference herein.

113.    Defendant, ARTCO's, conduct in terminating Plaintiff for his refusal to perform unsafe practices that he reasonably believed would endanger his safety, the safety of his crew, other seaman and the public is contrary to the law and the public policy embodied in the federal Maritime law, federal statutes and the purposes and provisions of 46 U.S.C. § 2114 and 46 U.S.C. § 2302.

114.    Defendant, ARTCO, at all times, has acted willfully and maliciously with respect to its treatment of Plaintiff.

115.    As a result of the foregoing treatment by Defendant, ARTCO, Plaintiff was caused to suffer mental pain and anguish as well as loss of income, benefits and loss of earning capacity.

116.    Wherefore, Plaintiff, Charles Marshall, prays for judgment against Defendant, American River Transportation Company, for compensatory damages in a fair and reasonable amount, and for punitive damages in the amount of TEN MILLION DOLLARS ($10,000,000.00), and for his costs, attorneys fees  and PREJUDGMENT INTEREST from the date of his termination and for such other relief as the Court deems necessary and proper.

-24-

## COUNT XVIII
## WRONGFUL TERMINATION- STATE LAW

117.    Plaintiff, Charles Marshall, realleges the allegations set forth above in paragraphs 1-19 and the same are made a part hereof and are incorporated by reference herein.

118.    Defendant, ARTCO's, conduct in terminating Plaintiff for his refusal to perform unsafe practices that he reasonably believed would endanger his safety, the safety of his crew, other seaman and the public is contrary to the law and the public policy of the State of Illinois, federal Maritime law, federal statutes and the purposes and provisions of 46 U.S.C. § 2114 and 46 U.S.C. § 2302.

119.    Defendant, ARTCO, at all times, has acted willfully and maliciously with respect to its treatment of Plaintiff.

120.    As a result of the foregoing treatment by Defendant, ARTCO, Plaintiff was caused to suffer mental pain and anguish as well as loss of income, benefits and loss of earning capacity.

121.    Wherefore, Plaintiff, Charles Marshall, prays for judgment against Defendant, American River Transportation Company, for compensatory damages in a fair and reasonable amount, and for punitive damages in the amount of TEN MILLION DOLLARS ($10,000,000.00), and for his costs, attorneys fees  and PREJUDGMENT INTEREST from the date of his termination and for such other relief as the Court deems necessary and proper.

## COUNT XIX
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

122.    Plaintiff, Charles Marshall, realleges the allegations set forth above in paragraphs 1-19 and the same are made a part hereof and are incorporated by reference herein.

-25-

123.    Defendant, ARTCO, intentionally inflicted mental and emotional distress upon Plaintiff through intimidations and threats, unethical, illegal and immoral work conditions, and created a threatening work environment from the time defendant, ARTCO, tried to get plaintiff, Charles Marshall, to push bigger loads, or "oversized" loads, for example in excess of 35 barges, until the time of his termination.

124.    Defendant, ARTCO, at all times, has acted willfully and maliciously with respect to its treatment of Plaintiff.

125.    As a result of the foregoing treatment by Defendant, ARTCO, Plaintiff was caused to suffer mental pain and anguish, as well as loss of income, benefits and loss of earning capacity.

126.    WHEREFORE, Plaintiff, Charles Marshall, prays for judgment against Defendant, American River Transportation Company, for compensatory damages in reasonable amounts, and for punitive damages in the amount of TEN MILLION DOLLARS ($10,000,000.00), and for his costs, attorneys fees and PREJUDGMENT INTEREST from the date of his termination and for such other relief as the Court deems necessary and proper.

## COUNT XX
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

127.    Plaintiff, Charles Marshall, realleges the allegations set forth above in paragraphs 1-19 and the same are made a part hereof and are incorporated by reference herein.

128.    Defendant, ARTCO, at all times, has acted wantonly and negligently in the above described treatment of Plaintiff.

129.    Defendant, ARTCO, negligently and wantonly inflicted mental and emotional distress upon plaintiff through intimidation and threats, unethical, illegal and immoral work conditions, and created a threatening and hostile work environment from the time defendant,

ARTCO, tried to get plaintiff, Charles Marshall, to push bigger or "oversized" loads, for example loads in excess of 35 barges,  until the time of his termination.  Defendant, ARTCO knew or should have known that its conduct would injure Plaintiff mentally.

130.    As a result of the foregoing treatment by Defendant, ARTCO, Plaintiff was caused to suffer mental pain and anguish, as well as loss of income, benefits and loss of earning capacity.

131.    WHEREFORE, Plaintiff, Charles Marshall, prays for judgment against Defendant, American River Transportation Company, for compensatory damages in reasonable amounts, and for punitive damages in the amount of TEN MILLION DOLLARS ($10,000,000.00), and for his costs, attorneys fees and PREJUDGMENT INTEREST from the date of his termination and for such other relief as the Court deems necessary and proper.

## COUNT XXI
## WRONGFUL DISCRIMINATION IN VIOLATION OF 46 U.S.C. § 2114

132.    Plaintiff, Tony Reames, realleges the allegations set forth above in paragraphs 1-19 and the same are made a part hereof and are incorporated by reference herein.

133.    Defendant, ARTCO, wrongfully discharged and discriminated against plaintiff, Tony Reames, for refusing to push bigger loads, or "oversized" loads, for example in excess of thirty-five (35) barges, when plaintiff had a reasonable apprehension or expectation that performing such duties would result in serious injury to plaintiff, other seamen, or the public.

134.    A reasonable person, under similar circumstances, would conclude that there is a real danger of injury or serious impairment of health from the performance of the duties required by defendant, ARTCO, described herein.

135.    Defendant terminated plaintiff, Tony Reames, as a result of his refusal to push bigger loads, or "oversized" loads, for example in excess of thirty-five (35) barges, in his position as a Pilot for defendant, ARTCO.

136.    That the aforesaid termination is a violation of the purposes and provisions of 46 U.S.C. § 2114.

137.    That Defendant, at all times, has acted willfully and maliciously with respect to its treatment of plaintiff, Tony Reames.

138.    That as a result of the foregoing treatment by defendant, plaintiff, Tony Reames, was caused to suffer mental pain and anguish as well as loss of income, benefits and loss of earning capacity.

139.    WHEREFORE, plaintiff, Tony Reames, prays for judgment against defendant, American River Transportation Company, for compensatory damages in a fair and reasonable amount, and for punitive damages in the amount of TEN MILLION DOLLARS ($10,000,000.00), and for his costs, attorneys fees and PREJUDGEMENT INTEREST from the date of his termination and for such other relief as the Court deems necessary and proper.

**COUNT XXII**
**WRONGFUL TERMINATION UNDER FEDERAL MARITIME COMMON LAW**

140.    Plaintiff, Tony Reames, realleges the allegations set forth in paragraphs 1-19 and the same are made a  part hereof and are incorporated by reference herein.

141.    Defendant, ARTCO's, conduct in terminating Plaintiff for his refusal to perform unsafe practices that he reasonably believed would endanger his safety, the safety of his crew,

other seaman and the public is contrary to the law and the public policy embodied in the federal

Maritime law, federal statutes and the purposes and provisions of 46 U.S.C. § 2114 and 46 U.S.C.

§ 2302.

142.    Defendant, ARTCO, at all times, has acted willfully and maliciously with respect to

its treatment of Plaintiff.

143.    As a result of the foregoing treatment by Defendant, ARTCO, Plaintiff was caused

to suffer substantial mental pain and anguish as well as loss of income, benefits and loss of earning

capacity.

144.    Wherefore, Plaintiff, Tony Reames, prays for judgment against Defendant,

American River Transportation Company, for compensatory damages in a fair and reasonable

amount, and for punitive damages in the amount of TEN MILLION DOLLARS ($10,000,000.00),

and for his costs, attorneys fees and PREJUDGMENT INTEREST from the date of his termination

and for such other relief as the Court Deems necessary and proper.

## COUNT XXIII
## WRONGFUL TERMINATION- STATE LAW

145.    Plaintiff, Tony Reames,  realleges the allegations set forth above in paragraphs 1-19

 and the same are made a part hereof and are incorporated herein.

146.    Defendant, ARTCO's conduct in terminating Plaintiff for his refusal to perform

unsafe practices that he reasonably believed would endanger his safety, the safety of his crew,

other seaman and the public is contrary to the law and the public policy of the State of Illinois,

federal Maritime law, federal statutes and the purposes and provisions of 46 U.S.C. § 2114 and 46

U.S.C. § 2302.

147.    Defendant, ARTCO, at all times, has acted willfully and maliciously with respect to its treatment of Plaintiff.

148.    As a result of the foregoing treatment by Defendant, ARTCO, Plaintiff was caused to suffer mental pain and anguish as well as loss of income, benefits and loss of earning capacity.

149.    WHEREFORE, Plaintiff, Tony Reames, prays for judgment against Defendant, American River Transportation Company, for compensatory damages in reasonable amounts, and for punitive damages in the amount of TEN MILLION DOLLARS ($10,000,000.00), and for his costs, attorneys fees and PREJUDGMENT INTEREST from the date of his termination and for such other relief as the Court deems necessary and proper.

## COUNT XXIV
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

150.    Plaintiff, Tony Reames, realleges the allegations set forth above in paragraphs 1-19 and the same are made a part hereof and are incorporated by reference herein.

151.    Defendant, ARTCO, intentionally inflicted mental and emotional distress upon Plaintiff through intimidations, and threats, unethical, illegal and immoral work conditions, and created a threatening work environment from the time defendant, ARTCO, tried to get plaintiff, Tony Reames, to push bigger loads, or "oversized" loads, for example in excess of 35 barges, until the time of his termination.

152.    Defendant, ARTCO, at all times, has acted willfully and maliciously with respect to its treatment of Plaintiff.

153.    As a result of the foregoing treatment by Defendant, ARTCO, Plaintiff was caused to suffer physical and mental pain and anguish, as well as loss of income, benefits and loss of earning capacity.

154.   WHEREFORE, Plaintiff, Tony Reames, prays for judgment against Defendant, American River Transportation Company, for compensatory damages in reasonable amounts, and for punitive damages in the amount of TEN MILLION DOLLARS ($10,000,000.00), and for his costs, attorneys fees and PREJUDGMENT INTEREST from the date of his termination and for such other relief as the Court deems necessary and proper.

### COUNT XXV
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

155.   Plaintiff, Tony Reames, realleges the allegations set forth above in paragraphs 1-19 and the same are made a part hereof and are incorporated by reference herein.

156.   Defendant, ARTCO, at all times, has acted wantonly and negligently in the above described treatment of Plaintiff.

157.   Defendant, ARTCO, negligently and wantonly inflicted mental and emotional distress upon plaintiff through intimidation and threats, unethical, illegal and immoral work conditions, and created a threatening and hostile work environment from the time defendant, ARTCO, tried to get plaintiff, Tony Reames, to push bigger or "oversized" loads, for example loads in excess of 35 barges,  until the time of his termination.  Defendant, ARTCO, knew or should have known that its conduct would injure Plaintiff mentally.

158.   As a result of the foregoing treatment by Defendant, ARTCO, Plaintiff was caused to suffer mental pain and anguish, as well as loss of income, benefits and loss of earning capacity.

159.   WHEREFORE, Plaintiff, Tony Reames,  prays for judgment against Defendant, American River Transportation Company, for compensatory damages in reasonable amounts, for

punitive damages in the amount of TEN MILLION DOLLARS ($10,000,000.00), and for his

costs, attorneys fees and PREJUDGMENT INTEREST from the date of his termination and for

such other relief as the Court deems necessary and proper.

**COUNT XXVI**
**WRONGFUL DISCRIMINATION IN VIOLATION OF 46 U.S.C. § 2114**

160.    Plaintiff, Gerald Ingram, realleges the allegations set forth above in paragraphs 1-19

and the same are made a part hereof and are incorporated by reference herein.

161.    Defendant, ARTCO, wrongfully discharged and discriminated against plaintiff,

Gerald Ingram, for refusing to push bigger loads, or "oversized" loads, for example in excess of

thirty-five (35)  barges, when plaintiff had a reasonable apprehension or expectation that

performing such duties would result in serious injury to plaintiff, other seamen, or the public.

162.    A reasonable person, under similar circumstances, would conclude that there is a

real danger of injury or serious impairment of health from the performance of the duties required

by defendant, ARTCO, described herein.

163.    Defendant terminated plaintiff, Gerald Ingram, as a result of his refusal to push

bigger loads, or "oversized" loads, for example in excess of thirty-five (35) barges, in his position

as a Pilot for defendant, ARTCO.

164.    That the aforesaid termination is a violation of the purposes and provisions of 46

U.S.C. § 2114.

165.    That Defendant, at all times, has acted willfully and maliciously with respect to its

treatment of plaintiff, Gerald Ingram.

166.    That as a result of the foregoing treatment by defendant, plaintiff, Gerald Ingram, was caused to suffer substantial mental pain and anguish as well as loss of income, benefits and loss of earning capacity.

167.    WHEREFORE, plaintiff, Gerald Ingram, prays for judgment against defendant, American River Transportation Company, for compensatory damages in a fair and reasonable amount, and for punitive damages in the amount of TEN MILLION DOLLARS ($10,000,000.00), and for his costs, attorneys fees and PREJUDGEMENT INTEREST from the date of his termination and for such other relief as the Court deems necessary and proper.

## COUNT XXVII
## WRONGFUL TERMINATION UNDER FEDERAL MARITIME COMMON LAW

168.    Plaintiff, Gerald Ingram, realleges the allegations set forth in paragraphs 1-19 and the same are made a part hereof and are incorporated by reference herein.

169.    Defendant, ARTCO's, conduct in terminating Plaintiff for his refusal to perform unsafe practices that he reasonably believed would endanger his safety, the safety of his crew, other seaman and the public is contrary to the law and the public policy embodied in the federal Maritime law, federal statutes and the purposes and provisions of 46 U.S.C. § 2114 and 46 U.S.C. § 2302.

170.    Defendant, ARTCO, at all times, has acted willfully and maliciously with respect to its treatment of Plaintiff.

171.    As a result of the foregoing treatment by Defendant, ARTCO, Plaintiff was caused to suffer substantial mental pain and anguish as well as loss of income, benefits and loss of earning capacity.

172.     Wherefore, Plaintiff, Gerald Ingram, prays for judgment against Defendant, American River Transportation Company, for compensatory damages in a fair and reasonable amount and for punitive damages in the amount of TEN MILLION DOLLARS ($10,000,000.00), and for his costs and PREJUDGMENT INTEREST from the date of his termination and for such other relief as the Court Deems necessary and proper.

**COUNT XXVII**
**WRONGFUL TERMINATION- STATE LAW**

173.     Plaintiff, Gerald Ingram, realleges the allegations set forth above in paragraphs 1-19 and the same are made a part hereof and are incorporated herein.

174.     Defendant, ARTCO's, conduct in terminating Plaintiff for his refusal to perform unsafe practices that he reasonably believed would endanger his safety, the safety of his crew, other seaman and the public is contrary to the law and the public policy embodied in the federal Maritime law, federal statutes and the purposes and provisions of 46 U.S.C. § 2114 and 46 U.S.C. § 2302.

175.     Defendant, ARTCO, at all times, has acted willfully and maliciously with respect to its treatment of Plaintiff.

176.     As a result of the foregoing treatment by Defendant, ARTCO, Plaintiff was caused to suffer substantial mental pain and anguish as well as loss of income, benefits and loss of earning capacity.

177.     Wherefore, Plaintiff, Gerald Ingram, prays for judgment against Defendant, American River Transportation Company, for compensatory damages in a fair and reasonable

amount and for punitive damages in the amount of TEN MILLION DOLLARS ($10,000,000.00),

and for his costs and PREJUDGMENT INTEREST from the date of his termination and for such

other relief as the Court Deems necessary and proper.

## COUNT XXVIII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

178.    Plaintiff, Gerald Ingram, realleges the allegations set forth above in paragraphs 1-19

and the same are made a part hereof and are incorporated by reference herein.

179.    Defendant, ARTCO, intentionally inflicted mental and emotional distress upon

Plaintiff through intimidations, and threats, unethical, illegal and immoral work conditions, and

created a threatening work environment from the time defendant, ARTCO, tried to get plaintiff,

Gerald Ingram, to push bigger loads, or "oversized" loads, for example in excess of 35 barges, until

the time of his termination.

180.    Defendant, ARTCO, at all times, has acted willfully and maliciously with respect to

its treatment of Plaintiff.

181.    As a result of the foregoing treatment by Defendant, ARTCO, Plaintiff was caused

to suffer mental pain and anguish, as well as loss of income, benefits and loss of earning capacity.

182.    WHEREFORE, Plaintiff, Gerald Ingram, prays for judgment against Defendant,

American River Transportation Company, for compensatory damages in reasonable amounts, and

for punitive damages in the amount of TEN MILLION DOLLARS ($10,000,000.00), and for his

costs, attorneys fees and PREJUDGMENT INTEREST from the date of his termination and for

such other relief as the Court deems necessary and proper.

## COUNT XXIX
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

183.    Plaintiff, Gerald Ingram, realleges the allegations set forth above in paragraphs 1-19 and the same are made a part hereof and are incorporated by reference herein.

184.    Defendant, ARTCO, at all times, has acted wantonly and negligently in the above described treatment of Plaintiff.

185.    Defendant, ARTCO, negligently and wantonly inflicted mental and emotional distress upon plaintiff through intimidation and threats, unethical, illegal and immoral work conditions, and created a threatening and hostile work environment from the time defendant, ARTCO, tried to get plaintiff, Gerald Ingram, to push bigger or "oversized" loads, for example loads in excess of 35 barges,  until the time of his termination.  Defendant, ARTCO, knew or should have known that its conduct would injure Plaintiff mentally.

186.    As a result of the foregoing treatment by Defendant, ARTCO, Plaintiff was caused to suffer mental pain and anguish, as well as loss of income, benefits and loss of earning capacity.

187.    WHEREFORE, Plaintiff, Gerald Ingram, prays for judgment against Defendant, American River Transportation Company, for compensatory damages in reasonable amounts, for punitive damages in the amount of TEN MILLION DOLLARS ($10,000,000.00), and for his costs, attorneys fees and PREJUDGMENT INTEREST from the date of his termination and for such other relief as the Court deems necessary and proper.

THE DYSART LAW FIRM, P.C.

Christopher W. Dysart
720 Olive St., Suite 2250
St. Louis, MO 63101
314-421-2273
314-621-6060 (Fax)